### HUGHES v. CHESAPEAKE & OHIO COAL & COKE CO.

(Circuit Court of Appeals, Third Circuit.     February 1, 1921.)

No. 2576.

1. **Damages** ⚖59—**Damages from breach of transportation contract, causing breach of contract of sale, not reduced because market price had increased.**

Where plaintiff, engaged in mining and selling coal, contracted to sell 8,000 tons to an electric company, by reference to quantity and grade, and without reserving or setting apart any particular coal, and contracted with defendant to transport the coal, the damages from defendant's breach, causing plaintiff to break its contract with the electric company, could not be reduced because plaintiff sold coal to other parties at a price higher than the contract price, since, if defendant had performed, it would doubtless have sold that much more coal.

2. **Appeal and error** ⚖1033(5)—**Measure of damages for breach of transportation contract selected by court held not prejudicial to defendant.**

Where defendant's breach of his contract to transport coal for plaintiff caused plaintiff to break its contract of sale with a third person, for which plaintiff was held liable to the third person, an instruction that the measure of damages was the difference between the contract rate for transportation and the increased market rates for the same period

---

did not prejudice defendant; the theory of damages selected imposing the lowest damages of any theory conceivably applicable.

In Error to the District Court of the United States for the District of New Jersey; J. Warren Davis, Judge.

Action by the Chesapeake & Ohio Coal & Coke Company against James Hughes, Jr. Judgment for plaintiff, and defendant brings error. Affirmed.

Russell E. Watson, of New Brunswick, N. J., for plaintiff in error.

Treacy & Milton, of Jersey City, N. J. (John Milton, of Jersey City, N. J., of counsel), for defendant in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and BODINE, District Judge.

WOOLLEY, Circuit Judge. The one question under review concerns the measure of damages for breach of the contract in suit. Speaking of the parties as they stood in the court below, the defendant, a charterer of boats and barges, was engaged in the business of furnishing and selling water transportation. The plaintiff was a coal mining company with storage and loading facilities at Norfolk, Virginia, engaged in the sale and transportation of coal along the Atlantic seaboard.

The defendant contracted to furnish the plaintiff transportation from Norfolk, Virginia, to the dock of the General Electric Company at West Lynn, Massachusetts, for monthly cargoes of coal of different tonnage, amounting for the period in question to 8,000 tons, at the rate of $1.05 per ton. After supplying transportation for 1,628 tons, the defendant defaulted,—whether because of greatly increased coastwise freights or inability to charter barges,—leaving unfurnished transportation for the remaining 6,372 tons. The defendant's breach of his undertaking brought about a corresponding breach on the part of the plaintiff of its coal contract with the General Electric Company, for which later the plaintiff was required to pay that concern $9,276.52 in damages. Contemporaneously with the scarcity of water transportation and the increase of freight rates, there was an increase in the market price of coal.

The plaintiff sued. At the trial, breach being admitted by the defendant and no pertinent fact being disputed, the court submitted the case to the jury, charging with reference to the measure of damages that the plaintiff was entitled to recover, not the amount of damages it was compelled to pay the General Electric Company, but the difference between the contract rate for transportation for the named months and the increased market rates for the same periods. On judgment being entered upon verdict for the plaintiff in the sum of $7,956.55, the defendant prosecuted this writ of error.

[1] The plaintiff in error (defendant below) specifies as error the refusal of the trial court to charge his several points, which, when compressed, were to the effect that if the jury found from the evidence that the coal undelivered by the plaintiff to the General Electric Company was sold elsewhere at a price in excess of the price at which it

was agreed to be sold to the General Electric Company, (a) the damages sustained by the plaintiff should be diminished to the extent of such excess; (b) there devolved upon the plaintiff the duty affirmatively to establish by evidence the amount of such excess; and (c) failing so to do, the plaintiff can have a verdict only for nominal damages.

Laying aside the question on which party rests the burden of proving elements in diminution of damages as a matter not pertinent to this issue as we shall decide it, we are of opinion that the serious fault in the defendant's contention—that the plaintiff's sale of coal on the market at a price higher than its contract price with the General Electric Company diminished its damages—arises from the defendant's failure properly to apprehend or to state all the facts in the case. The rule of damages for which the defendant insisted—and still insists—was based on the hypothesis that the 6,372 tons of coal, not shipped because of the defendant's failure to furnish transportation, were afterwards sold by the plaintiff at a price higher than that at which it would have sold it to the General Electric Company if the defendant had not breached the contract. This contention was based on the further suppositions that the plaintiff had allocated to the General Electric Company and held for its use alone a particular body of coal in the amount of the contract tonnage, and that after the defendant's breach of the contract the plaintiff sold this particular coal on the market at a price higher than it would have gotten if it had been able to make deliveries to the General Electric Company. This premise—on which alone the defendant's contention for diminished damages was based—we regard as false in view of the character of the plaintiff's business and its manner of carrying it on.

The plaintiff was engaged in the business of mining coal. That was its main operation. It was engaged also in the business of selling and shipping the coal it mined. It moved coal from its mines in West Virginia to its dock at Norfolk, Virginia, where at all times it kept as nearly as may be a reservoir of 10,000 to 12,000 tons from which it drew indiscriminately to meet its contracts as transportation was available. In contracting for the sale of coal it contracted with reference to quantity and grade, not with reference to coal by description or designation. No particular coal or body of coal was reserved or set apart to fill any of its contracts.

It is readily seen that this is not a case where a vendor, who, after refusal by the vendee to accept specific goods contracted for, disposed of them to someone else at the market, and where, accordingly, his damages would be the difference between the contract price and the resale price. It is a case where the plaintiff vendor was prevented by the defendant's breach from selling this quantity of coal to anyone else. If the defendant had supplied the plaintiff with barges sufficient to carry the tonnage contracted for, the plaintiff—remembering always that it was a miner, dealing not in specific coal but with its mine output on a tonnage basis—would, doubtless, have sold just 6,372 tons of coal more than it did. The plaintiff's supply of coal was not limited, except, of course, by the contents of its mine; its coal deliveries were distinctly limited by transportation facilities. Its

concern at the time was not with mine production or with coal sales but with facilities for transportation. It was with reference to these that it contracted with the defendant. Its loss from lack of such facilities, occasioned by the defendant's failure to supply them as he had contracted to do, was not diminished by the sale of coal elsewhere at a higher price by resort to such other facilities of transportation as it could obtain.

[2] We are of opinion that of the several theories of damages—other than the one of nominal damages—conceivably applicable to this case, the court, if it erred at all in selecting for its instructions to the jury that one which, imposing the lowest damages, embraced the difference betwen the stipulated rate of freight and the current rates at the periods when according to the contract the transportation should have been ready (Higginson v. Weld, 80 Mass. [14 Gray] 165; The Oregon v. Pittsburgh & L. A. Iron Co., 55 Fed. 666, 5 C. C. A. 229; Ogden v. Marshall, 8 N. Y. 340, 59 Am. Dec. 497), did not prejudice the defendant.

The judgment below is affirmed.